# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **J.J.**

**No. 17-0523** (Preston County 17-JA-7)

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.S., by counsel Natalie J. Sal, appeals the Circuit Court of Preston County's May 5, 2017, order terminating his custodial and parental rights to J.J.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), DeAndra Burton, filed a response on behalf of the child in support of the circuit court's adjudication of petitioner as an abusing parent, but in opposition of termination of petitioner's custodial and parental rights. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent and terminating his custodial and parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2017, the DHHR filed a petition alleging that the child was abused and neglected due to petitioner's and the mother's addiction to controlled substances. According to the DHHR, the child was born with symptoms of withdrawal associated with the mother's abuse of cocaine and illicit buprenorphine. While the mother was pregnant with the child, she and petitioner were essentially homeless, and, at one point, slept in a vehicle. According to the DHHR, petitioner was present at the hospital for the birth of the child, but left the hospital when the mother was discharged, even though the child remained in the hospital for five more days. After the initial petition, the DHHR filed an amended petition alleging that petitioner was arrested and charged with possession of cocaine. The amended petition further alleged that petitioner was addicted to controlled substances, which impaired his judgment, and was unable to properly supervise his infant child.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

While the child remained in the hospital for the additional five days after the mother's discharge, petitioner did not visit her, give the hospital staff any emergency contact information, or provide any care or necessities for the child. While the child was in the hospital, the nurses provided clothing, diapers, a blanket, and all basic care for the child. Thus, the DHHR also alleged that petitioner did not visit or call the hospital to check on the health, safety, and well-being of the child. While the child remained in the hospital, the caseworker made multiple attempts to contact the mother and petitioner. When the caseworker was able to contact petitioner, he told her that he and the mother had not visited the child because of transportation problems. According to the DHHR, the parents returned to the hospital five days after the child's birth, but the DHHR had already obtained custody of the child. Petitioner called the caseworker and the caseworker explained why the child was not released to the parents and provided them visitation with the child. Petitioner failed to contact the DHHR regarding visitation and failed to attend the preliminary hearing.

At the end of February of 2017, the circuit court held an adjudicatory hearing at which a police officer testified that on the evening after the preliminary hearing, he approached petitioner after observing petitioner's car had no license plate. Upon investigation, the officer discovered an outstanding warrant for petitioner for breaking and entering. Upon arresting petitioner, the officer found a bag on petitioner that tested positive for cocaine. As a result, petitioner was also charged with possession of a controlled substance. Petitioner was incarcerated from February 10, 2017, until March 29, 2017.

In April of 2017, the circuit court held a dispositional hearing, for which petitioner failed to appear in person, but, by counsel, filed a motion for a post-adjudicatory improvement period. The caseworker testified regarding petitioner's failure to contact her to request visitation or inquire as to the well-being of his child at any time since her birth. She further testified that petitioner's lack of contact or concern for the child continued throughout the course of the proceedings. Due to petitioner's absence at the dispositional hearing, his counsel proffered that petitioner wanted to be a parent to the child and was attempting to secure housing, transportation, a job, and a reliable phone service. However, the circuit court found no evidence that petitioner would comply with an improvement period. The circuit court also found that the DHHR made reasonable efforts to provide services, prevent removal, and achieve permanency, but petitioner made no efforts to contact the DHHR to initiate services. Finally, the circuit court found termination of petitioner's custodial and parental rights was the least restrictive alternative, found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future, and found that the best interests of the child required termination of custodial and parental rights. Ultimately, the circuit court terminated petitioner's custodial and parental rights in its May 5, 2017, order.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

---

[2]Both parents' parental and custodial rights to the child were terminated below. According to the DHHR and the guardian, the child is placed with a family member with a permanency plan of adoption in that home.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in adjudicating him as an abusing parent. Petitioner asserts that his failure to visit the child in the hospital, not having permanent housing, and being "uninformed as to prenatal care" of the mother of the child, did not constitute abuse or neglect. Petitioner also argues that his past arrest for non-violent offenses, namely, breaking and entering and possession of a controlled substance without any finding that he had a substance abuse problem, were not related to his ability to parent the child. Further, petitioner argues that his knowledge of the mother's drug use during pregnancy is clearly beyond the scope of what this Court has defined as child abuse or neglect. We disagree.

Although petitioner is correct that his arrest for breaking and entering is unrelated to his ability to parent his child, the fact that he was arrested with drugs on his person is evidence of his issues with drugs, which would affect his ability to parent his child. We need not address petitioner's other arguments in support of this assignment of error because the Court has established that "[w]hen a child is born alive, the presence of illegal drugs in the child's system at birth constitutes sufficient evidence that the child is an abused and/or neglected child . . . ." Syllabus point 1, *In re A.L.C.M.*, 239 W.Va. 382, 801 S.E.2d 260 (2017). Here, the record on appeal shows that the child suffered from withdrawal symptoms associated with the mother's use of cocaine and buprenorphine. The record also shows that the father testified as to his knowledge of the mother's drug abuse.

West Virginia Code § 49-1-201 defines abused child as "a child whose health or welfare is being harmed or threatened by: (A) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or *knowingly allows* another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." (emphasis added). This Court has held that "with respect to [f]ather's alleged failure to stop [m]other's illegal drug use during her pregnancy, the statues governing abuse and neglect proceedings allow a finding of abuse to be based upon a parent's knowledge that another person is harming his/her child." *A.L.C.M.*, 239 W.Va. at - -, 801 S.E.2d at 269-70. Therefore, petitioner's knowledge of the mother's drug abuse and failure to stop the drug abuse during pregnancy is enough to find

that the circuit court properly adjudicated petitioner as an abusing parent. Based on this evidence, we find no error in the circuit court's adjudication of petitioner as an abusing parent.

Next, petitioner argues that the circuit court erred in terminating his custodial and parental rights because the circuit court's factual findings were insufficient to support termination.[3] Petitioner also argues that he did not have adequate time after being released from incarceration to contact the DHHR and begin participating in services. We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are directed to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

Here, it is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse or neglect in the near future. As discussed above, petitioner suffered from substance abuse issues, had knowledge of the mother's drug use during her pregnancy with the child, failed to provide care for the child during her stay in the hospital, and failed to call the hospital to check on the child's wellbeing. Petitioner also failed to visit the child for at least five days while the child remained in the hospital recovering from the effects of the mother's substance abuse during pregnancy. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W.Va. 79, 90, n. 14, 479 S.E.2d 589, 600, n. 14 (1996)(citing *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 228 and 237, 470 S.E.2d 177, 182 and 191 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Further, once the child was released from the hospital into the DHHR's custody, petitioner did not try to contact the DHHR, and the DHHR's efforts to reach petitioner regarding services, including visitation, failed. Additionally, at the dispositional hearing, counsel for petitioner proffered that petitioner was making efforts to secure housing, employment, transportation, and a phone service, but petitioner's counsel offered no evidence in support of her proffer.

As such, we find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse or neglect in the near future. Further, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no

---

[3]Petitioner also argues that termination was improper because his adjudication was improper. However, because we find petitioner's adjudication was appropriate, he is entitled to no relief in this regard.

4

reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). The circuit court also found termination of petitioner's custodial and parental rights to be in the best interest of the child. For these reasons, we find no error in the circuit court's termination of petitioner's custodial and parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 5, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker